# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MOHAMMED GHORI, GHORI NO. 1 CAB CORPORATION, INF CAB CORPORATION, AND UBOO CAB CORPORATION, ) ) ) ) Appellants, ) ) v. ) ) GHORI NO. 1 CAB CORPORATION c/o CH. 7 ) TRUSTEE FRANCES GECKER LLP, OFFICE ) OF U.S. TRUSTEE, RASOOL KHAN, TRANSIT ) FUNDING ASSOCIATION, LLC, et al., ) ) Appellees. ) | Case No. 13 C 8544<br><br>Judge Joan B. Gottschall |

## MEMORANDUM OPINION & ORDER

On March 1, 2013, Ghori No. 1 Cab Corporation, INF Cab Corporation, and Uboo Cab Corporation (collectively, "Debtors") filed petitions for chapter 11 bankruptcy in the Bankruptcy Court for the Northern District of Illinois. The three cases were then substantively consolidated into one. On November 6, 2013, the bankruptcy court entered an order converting that case to chapter 7. Debtors then filed a motion to reconsider that order, which the bankruptcy court denied. Debtors now move this court for an emergency stay of enforcement of the bankruptcy court's order converting the case, pursuant to Federal Rule of Bankruptcy Procedure 8005. For the reasons stated below, the motion is denied.

### I. BACKGROUND

In 1999, Mohammed Ghori ("Ghori") and Rasool Khan ("Khan") entered into an oral agreement to create and manage three taxicab businesses in Chicago: Ghori No. 1 Cab Corporation, INF Cab Corporation, and Uboo Cab Corporation. Ghori's family owns a 75% share of each of these three companies, and Khan owns the remaining 25% share.

Two years later, in 2001, the relationship between Ghori and Khan deteriorated, and Khan withdrew from managing the three companies, though no action was taken to eliminate his 25% interest. Ghori continued to manage the three companies until 2010, when he entered into a contract with Steve Newman to sell the primary assets of the companies—three taxi cab medallions—for $200,000 each. Ghori's deal with Newman did not ultimately go through, however, because the City of Chicago (the "City") needed to approve the transfer of the medallions before the sale could be completed. The City did not approve the transfer because the parties had failed to obtain Khan's consent to transfer the medallions to Newman.

Newman and Khan then each filed a lawsuit against Ghori in state court. Newman alleged that Ghori breached the agreement to sell him the medallions, and he sought specific performance and damages. Khan's lawsuit sought to enjoin the sale to Newman and recover damages for years of undistributed profits. After these two lawsuits were filed, Debtors filed for chapter 11 bankruptcy.

On October 22, 2013, Khan filed a motion to convert the chapter 11 case to chapter 7. In support of his motion, Khan argued that the bankruptcy case had been filed in bad faith, noting that Debtors had grossly mismanaged the estate and had been operating at a loss since filing for bankruptcy protection. On November 2, 2013, four Secured Creditors—Transit Funding Associates 5 LLC, Signature Financial LLC, Transit Funding Associates LLC, and Capital One Taxi Medallion Finance (collectively, "Secured Creditors")—also filed a motion to convert. They argued that conversion was necessary because the estate was suffering substantial and continuing losses and there was no reasonable likelihood of rehabilitation.

On November 6, 2013, both motions were presented at a motion hearing before the bankruptcy court. At the hearing, counsel for Debtors stated that he had not had an opportunity

to submit a response to either motion and requested additional time to do so. The court noted that it was urgent that the court decide the motions because the medallions needed to be sold by the end of the year in order to ensure that the City would not revoke them. The court found that Debtors were operating at a negative cash flow, that it was unlikely that continued operation would benefit the estate, and that it was unlikely that any plan other than liquidation would be confirmed. Accordingly, the bankruptcy court granted Khan's motion to convert.

On November 10, 2013, Debtors filed a motion to reconsider the bankruptcy court's order. Debtors argued that the order had been entered without providing them with notice and a hearing, in violation of 11 U.S.C. § 1112(b). That statute contemplates that debtors will be provided twenty-one days' notice of a motion to convert. Debtors here were given only two days' notice of the Secured Creditors' motion. Debtors also claimed that had the bankruptcy court considered the arguments and evidence presented in their motion to reconsider, the court would have denied the motion to convert.

In an eight-page oral ruling, the bankruptcy court rejected Debtors' arguments and denied their motion to reconsider. The court found that, assuming additional notice should have been given, Debtors' motion to reconsider and its briefing in support of that motion set out its position, which constituted an adequate opportunity to be heard. The court also reaffirmed its finding that there was cause to convert the case to chapter 7 because of the substantial and continuing losses to the estate and the lack of a reasonable likelihood of rehabilitation.

Debtors then filed their appeal in this court, as well as an emergency motion to stay the bankruptcy court's order pending the resolution of their appeal.

## II. LEGAL STANDARD

"On a motion to stay an order of the Bankruptcy Court pending appeal pursuant to Bankruptcy Rule 8005, the movant bears a heavy burden to prevail." *In re A&F Enters., Inc. II*, No. 13 C 7020, 2013 WL 5548911, at *1 (N.D. Ill. Oct. 8, 2013). In considering whether to grant a stay pending appeal under Bankruptcy Rule 8005, courts consider the following factors: (1) whether the appellant is likely to succeed on the merits of the appeal; (2) whether the appellant will suffer irreparable injury absent a stay; (3) whether a stay would substantially harm other parties in the litigation; and (4) whether a stay is in the public interest. *In re Forty-Eight Insulations*, 115 F.3d 1294, 1301 (7th Cir. 1997). With respect to the first factor, the appellant must "demonstrate a substantial showing of likelihood of success, not merely the possibility of success, because [it] must convince the reviewing court that the lower court, after having the benefit of evaluating the relevant evidence, has likely committed reversible error." *Id.* The appellant also bears the burden to prove that it will suffer irreparable injury. *Id.* at 1300. If the appellant does not meet its burden with respect to either of these two issues, then the court should end its analysis and deny the motion to stay. *Id.* at 1301. Only if the appellant meets its burden will the court consider whether a stay would substantially harm other parties in the litigation, and whether a stay is in the public interest. *Id.*

## III. ANALYSIS

Debtors raise the same two issues on appeal as they raised in their motion to reconsider. They contend, first, that they were denied sufficient notice, and, second, that there was no cause to convert the case to chapter 7. Secured Creditors disagree with Debtors on both issues, and they also submit that the motion should be denied on procedural grounds because Debtors did

not first seek a stay before the bankruptcy court. The court will first address this procedural argument and then turn to the merits of Debtors' motion.

**A. Debtors' Failure to First Seek Relief from the Bankruptcy Court**

Federal Rule of Bankruptcy Procedure 8005 provides that "[a] motion for a stay . . . must ordinarily be presented to the bankruptcy judge in the first instance." Fed. R. Bankr. P. 8005. If instead the party appeals directly to the district court, the party "shall show why the relief . . . was not obtained from the bankruptcy judge." *Id.*

Debtors claim that they did not seek a stay from the bankruptcy court because it would have been futile and because it was urgent that they seek a stay before the trustee sold the assets of their business. At a hearing before the bankruptcy court on November 26, 2013, the court noted that it was the usual procedure for appellants to first file a motion for a stay pending appeal before the bankruptcy court, but the court also noted that it was not likely to grant a stay and that "[a]lternatively, [Debtors could] go to the district court and say that under the circumstances of the case [they] didn't have time to come to bankruptcy court first . . . ." (Nov. 26, 2013, Tr. 9:18-21, ECF No. 17-1.) The court acknowledged the "need for expedition in selling the medallions." (*Id.* at 7:22.) The next day, Debtors filed an emergency motion for a stay in this court.

Given these circumstances, the court will entertain the request for a stay, notwithstanding the fact that appellants did not follow the usual procedure of first presenting the motion to the bankruptcy court. The court does not endorse Debtors' failure to first seek a stay from the bankruptcy court. Even if that court denied the stay, as it indicated it would, it might have further explained its views (as it did when it denied Debtors' motion for reconsideration), which would have aided this court's review of the bankruptcy court's order. Nevertheless, given

5

Debtors' concern that there was an imminent risk that the assets of their business would be sold, as well as the bankruptcy court's indication that it likely would not grant the stay, the court will consider the merits of Debtors' motion to stay.

**B. The Motion to Stay Standard**

### 1. Whether Debtors Had a Sufficient Opportunity to be Heard

Debtors first argue that they did not receive sufficient notice of the Secured Creditors' motion to convert. Section 1112(b)(1) of the Bankruptcy Code allows the bankruptcy court to convert a chapter 11 case to a chapter 7 case "after notice and a hearing." 11 U.S.C. § 1112. Bankruptcy Rule 2002(a)(4) provides that the debtor shall be given at least twenty-one days' notice of a motion to convert. Fed. R. Bankr. P. 2002(a)(4). Bankruptcy Rule 9006(c) authorizes the court to shorten that notice period for cause. "Collectively, these provisions envision hearing on a party's request to convert or dismiss a Chapter 11 proceeding, conducted on twenty[-one] days' notice to the parties; but neither requirement is rigid." *In re Bartle*, 560 F.3d 724, 729 (7th Cir. 2009).[1]

In *Bartle*, the court noted that even if a party was deprived of an adequate opportunity to respond, reversal is not warranted unless the party's substantial rights were affected by the error. *Id.* at 730. The *Bartle* court assumed that Bartle was deprived of adequate notice, but found that his substantial rights were not affected because he had an opportunity to be heard via his motion to alter or amend. *Id.* The court thus affirmed the order dismissing the case for cause. *Id.* at 731.

Here, as in *Bartle*, even assuming that Debtors were not provided adequate notice, they had an adequate opportunity to be heard via their motion to reconsider. Debtors' briefs in

---

[1] When Rule 2002(a)(4) was amended in 2009, the 20-day notice period became a 21-day notice period.

support of their motion to reconsider identified the evidence and arguments that they say they would have presented to the bankruptcy court had they had more time to respond. The bankruptcy court addressed those arguments in its oral ruling denying Debtors' motion to reconsider. In their motion to stay, Debtors do not identify any additional evidence that they would have presented at an evidentiary hearing. Accordingly, Debtors have not demonstrated a substantial showing that they will likely prevail on this issue.

## 2. **Whether There Was Sufficient Cause to Convert to Chapter 7**

Debtors also contend that they will likely succeed on appeal because the bankruptcy court erred in finding that there was cause to convert the case to chapter 7. Such a finding is reviewed for an abuse of discretion. *Han v. Linstrom*, No. 02 C 213, 2002 WL 31049846, at *4 (N.D. Ill. Sept. 12, 2002) (citing *In re Woodbrook Assocs.*, 19 F.3d 312, 316 (7th Cir. 1994)). A bankruptcy court has abused its discretion where its decision is premised on an incorrect legal principle or a clearly erroneous factual finding, or where the record contains no evidence to rationally support the decision. *Wies v. Cmty. Bank of Cent. Wis.*, 552 F.3d 584, 588 (7th Cir. 2009) (citing *Corporate Assets, Inc. v. Paloian*, 368 F.3d 761, 767 (7th Cir. 2004)).

The bankruptcy court converted the case under § 1112(b)(1), which provides that the court "shall" convert a case from chapter 11 to chapter 7 "for cause." Section 1112(b)(4)(A) codifies a two-prong test: (1) continuing loss to or diminution of the estate and (2) an absence of a reasonable likelihood of rehabilitation. On appeal, all of Debtors' arguments go to the second prong—whether there is a reasonable likelihood of rehabilitation. In considering that question, courts ask "whether the debtor's business prospects justify continuance of the reorganization effort." *In re LG Motors, Inc.*, 422 B.R. 110, 116 (Bankr. N.D. Ill. 2009).

In the bankruptcy court, Secured Creditors presented evidence that since March 2013, Debtors were losing an average of $7,993.20 per month and had lost money in six of the seven months since Debtors had filed for bankruptcy. They noted that these monthly losses did not include over $30,000 in legal fees that Debtors had incurred or that they would continue to incur if the case were not converted. They argued that the main source of collateral—the taxi medallions—were heavily regulated by the City, making Debtors' prospects for rehabilitation slim. And they referred the court to a City ordinance which provided that Debtors must replace two of their three cabs in order to legally operate in 2014, adding another major expenditure for which Debtors' plan would have to account. In sum, Secured Creditors calculated that Debtors owed approximately $360,000 to Secured Creditors, $1,165,000 to unsecured creditors, $24,000 to Toyota Credit for a car loan, and $30,000 to Debtors' counsel, for a total of $1,579,000. Even by Debtors' estimate, the three medallions were worth only $1,050,000.

To be sure, Debtors disputed the Secured Creditors' assessment of their business prospects. They argued that they could (i) sell one of the medallions to pay off the Secured Creditors immediately; (ii) negotiate with one of the unsecured creditors, Steve Newman, to reduce his claim from $200,000 to $60,000 or less; (iii) object to the claim of another unsecured creditor, Rasool Khan, to reduce his claim from $700,000 to $0; and (iv) extinguish Khan's interest in the three companies.

Nevertheless, the bankruptcy court agreed with the Secured Creditors that the business was not likely to be rehabilitated. In explaining its rationale, the court stressed Debtors' significant operating losses since the commencement of the bankruptcy and the parties' inability to reach a settlement. The court noted that Debtors had not yet filed any plan of reorganization, despite the case being filed eight months earlier. It noted that Debtors' plan hinged on their

ability to secure Khan's consent to sell one of the medallions, but that Khan had refused to provide such consent. And it found that there was no legal authority to support Debtors' claim that it could extinguish Khan's equity interest through a bankruptcy plan.

The evidence that Debtors presented to the bankruptcy court rationally supports the court's decision. Debtors do not identify any incorrect legal principle that the bankruptcy court applied or any clearly erroneous factual finding that it made. Instead, they simply rehash the various reasons why they *may* be able to reduce some of the unsecured creditors' claims and assert that "[t]he plan which was scheduled to be filed . . . was poised to set forth the strategies for accomplishing a successful organization . . . ." (Appellants' Reply Br. 12-13, ECF No. 21.) But this wishful thinking is a far cry from the substantial showing that Debtors must demonstrate to obtain a stay of the bankruptcy court's order. Debtors acknowledge that their submission on this issue is terse, noting that they "will not realistically be able to present facts and developed arguments to this court within the short time allowed." (*Id.* at 2.) This court cannot grant a stay simply because Debtors will suffer irreparable harm, however; they must *demonstrate* a substantial showing that they are likely to succeed. This they have not done.

## IV. CONCLUSION

Because they have not demonstrated a substantial showing that they are likely to succeed on the merits of their appeal, Debtors' motion to stay enforcement of the bankruptcy court's order converting the case to chapter 7 is denied.

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: December 17, 2013